AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of Oklahoma

| | |
|---|---|
| United States of America<br>v.<br>Justin Harjo<br><br>Defendant(s) | ) ) ) ) Case No. 21-MJ-178-CDL<br>) ) ) ) |

**FILED**
MAR 12 2021
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **May 23, 2019** in the county of **Tulsa** in the **Northern** District of **Oklahoma**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1111 | First Degree Murder in Indian Country |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Special Agent Andrew Melville, FBI
Printed name and title

Sworn to ~~before me and signed in my presence.~~ by telephone

Date: 3/12/2021

_____
Judge's signature

City and state: Tulsa, OK

Christine D. Little, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF AN ARREST WARRANT
## IN THE NORTHERN DISTRICT OF OKLAHOMA

I, Andrew Melville, being duly sworn under oath, do hereby depose and state:

### INTRODUCTION

1. I am Special Agent with the Federal Bureau of Investigation, and as such, I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I am currently employed with the Federal Bureau of Investigation and have been so employed since August 2006.

2. I am currently assigned to the Elko Resident Agency of the Las Vegas Division and have been so assigned since August 2015. In my current assignment in the Elko Resident Agency I investigate Indian Country Crimes. I have received investigative training at the FBI Academy as well as numerous in-service trainings during the last 14 years.

3. It is my belief that an Indian male known as **Justin Harjo (HARJO)** (DOB xx/xx/1996), a United States citizen and a Citizen of the Muscogee (Creek) Nation has violated 18 U.S.C. § 1111 and that on or about May 23, 2019, **HARJO** assisted Chauncey Thomas (Thomas) in burglarizing Dion Carr's (Carr) residence at 4214 Frankford Avenue, Tulsa, OK 74115.

4. During the commission of the burglary, Carr and Thomas were shot. Carr died on scene and Thomas died three days after in the hospital. The violation took place in the vicinity of 4214 North Frankfort Avenue, Tulsa, Oklahoma 74115 which lies within the Northern District of Oklahoma and based on the ruling of the United States Supreme Court in *McGirt v. Oklahoma*, 591 U.S. ___ (2020), is within the Cherokee Nation Reservation and "Indian Country," as that term is defined under 18 U.S.C. § 1151.

**THE SOURCE OF MY INFORMATION AND GROUNDS FOR MY BELIEFS ARE AS FOLLOWS:**

5. As part of this investigation, I have reviewed police reports prepared by the Tulsa Police Department, as well as witness statements. The facts stated in this affidavit are not every fact known, and include just the facts necessary to establish probable cause.

6. On or about May 23, 2019, officers of the Tulsa Police Department were dispatched to 4214 Frankfort Avenue, Tulsa, OK which is within the Northern District of Oklahoma, the Cherokee Nation Reservation, and Indian Country jurisdiction, as that is term is defined in 18 U.S.C. § 1151, in response to a report of a First Degree Burglary with shots fired.

7. Upon arrival, law enforcement made contact with S.D. S.D. stated someone broke into her house and her boyfriend was down inside the house. Officers cleared the house and saw S.D.'s boyfriend, Carr, lying motionless. Paramedics arrived on scene and pronounced Carr dead. Upon further review of the scene, officers noticed a blood trail originating from the residence onto the street. S.D. was not bleeding. Officers were subsequently notified that a gunshot victim was dropped off at Hillcrest Medical Center. Officers responded to gather additional information.

8. Officers received surveillance video from Hillcrest Medical Center which showed a person driving a silver vehicle without a front bumper drop someone off at the door. The individual was wearing a light-colored hoodie, dark-colored pants, and a mask covering their face. The individual exited the driver's seat, removed a person from the back-passenger seat, left the person by the door, and drove away.

9. The gunshot wound victim who was dropped off was identified as Thomas. Officers observed a left-foot black Nike "Jordan" shoe on the bedroom floor at the crime scene with no

matching right-foot shoe. At the hospital, Thomas only had one shoe on his right foot. The shoe was a black Nike "Jordan," and matched the shoe found in the victim's bedroom.

10. Detectives interviewed S.D. who told officers there were two suspects at her house. One suspect entered through the bedroom window wearing a black hoodie and something covering his face, and one suspect stood outside the window wearing a gray hoodie and something covering his face. The suspect outside the window tried to get through the window but was unsuccessful. The suspect who entered through the window fought with Carr and appeared to try to pull his (the suspect's) gun out. Carr told S.D. to run and as she ran out the bedroom, she heard two gunshots.

11. Detectives interviewed J.S., who was also present in the house during the incident. J.S. told detectives she was in the living room when she heard the commotion. J.S. ran out the house and heard three to four gunshots while she was running. J.S. saw someone with a gray hoodie run across the street. Moments later, J.S. saw a four-door silver vehicle pull up abruptly from the same direction the person with the gray hoodie ran towards.

12. Detectives interviewed a cooperating witness #1 (CW1) who requested to keep their identity concealed due to fear for their safety. CW1 told detectives he/she was with Thomas and **HARJO** just prior to the shooting. Thomas called CW1 around 1:06 a.m. and told CW1 he was shot and headed to Hillcrest hospital. CW1 overheard **HARJO** on the phone telling Thomas to, "breathe." CW1 spoke to **HARJO** after visiting Thomas in the hospital and **HARJO** told CW1 he dropped off Thomas, "20 minutes ago." CW1 provided **HARJO's** cell phone: 918-922-4760.

13. A search warrant was signed for **HARJO's** cell phone location records by a Tulsa County Judge. Records revealed at around the time of the incident, **HARJO's** cell phone was at or near the scene of the incident. Immediately after the incident, **HARJO's** cell phone then traveled to Hillcrest hospital. **HARJO's** cell phone records led detectives to cooperating witness #2 (CW2)

14. CW2 requested to keep their identity concealed due to fear for their safety. CW2 told detectives **HARJO** arrived at CW2's residence in a white hoodie and dark-colored pants the night of the incident and said something bad happened. **HARJO** told CW2 that he and Thomas went to someone's house to rob them. **HARJO** said Thomas went through the window and got shot and Thomas shot the victim. **HARJO** said he drove Thomas to the hospital.

15. **HARJO** subsequently told CW2 to follow him in his vehicle, and they left CW2's residence. **HARJO** drove a silver or gray-colored vehicle out to the country and set it on fire. I have reviewed the hospital surveillance images, and compared them to pictures of the burned vehicle, and they appear to be the same.

16. All the above described events took place in Indian Country in Tulsa, Oklahoma, in the Northern District of Oklahoma.

## RELEVANT STATUTES

17. 18 U.S.C. § 1151 provides:

    Except as otherwise provided in sections 1154 and 1156 of this title, the term "Indian country" as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and including rights-of-way running through the reservation (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether or without the limits of the state and (c) all Indian allotments the Indian titles to which have not been extinguished, including the rights-of-way running through the same.

18. 18 U.S.C. § 1153(a) provides: Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder,

manslaughter, kidnapping, maiming, a felony under chapter 109A, incest, a felony assault under section 113, an assault against an individual who has not attained the age of 16 years, felony child abuse or neglect, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

19. 18 U.S.C. § 1111 provides, in pertinent part:

(a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

Any other murder is murder in the second degree.

(b) Within the special maritime and territorial jurisdiction of the United States, Whoever is guilty of murder in the first degree shall be punished by death or by imprisonment for life;

Whoever is guilty of murder in the second degree, shall be imprisoned for any term of years or for life.

(c) For purposes of this section-

    (1) the term "assault" has the same meaning as given that term in section 113;

    (2) the term "child" means a person who has not attained the age of 18 years and is-

        (A) under the perpetrator's care or control; or

(B) at least six years younger than the perpetrator;

(B) the term "child abuse" means intentionally or knowingly causing death or serious bodily injury to a child;

(C) the term "pattern or practice of assault or torture" means assault or torture engaged in on at least two occasions;

(D) the term "serious bodily injury" has the meaning set forth in section 1365; and

(6) the term "torture" means conduct, whether or not committed under the color of law, that otherwise satisfies the definition set forth in section 2340(1).

## CONCLUSION

20.  Based on the information set forth in this affidavit, I respectfully submit that there is probable cause to believe that Justin Harjo has committed first degree (felony murder in violation of 18 U.S.C. 1111.)

_____
Andrew Melville, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to ~~before me~~ by phone on the 12th day of March, 2021.

_____
HON. Christine D Little
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF OKLAHOMA